**FEDERAL DEPOSIT INSURANCE CORP., Plaintiff,**

v.

**Hernán PÉREZ PÉREZ, Eloisa Grau De Pérez and the Conjugal Partnership which they constitute, Defendants.**

Civ. No. 84–3276 (JP).

United States District Court, D. Puerto Rico.

March 13, 1986.

Nancy Pujals, San Juan, P.R., for plaintiff.

José Raúl Cancio Bigas, Hato Rey, P.R., for defendants.

OPINION AND ORDER

PIERAS, District Judge.

This case came to Trial on January 7, 1986 at the United States District Court for the District of Puerto Rico in San Juan, Puerto Rico. Plaintiff Federal Deposit Insurance Corporation (FDIC) was represented by Nancy Pujals, Esq., and defendants Hernán Pérez Pérez, Eloisa Grau de Pérez and the conjugal partnership by them constituted were represented by José Raúl Cancio Bigas, Esq.

Trial on the merits was limited to the issue of the liability of co-defendants Eloisa Grau (Grau) and the conjugal partnership constituted with co-defendant Hernán

Pérez Pérez (Pérez) for the debt evidenced by a promissory note dated December 19, 1983 which was signed only by co-defendant Pérez. The liability of co-defendant Pérez and the amounts owed on account of the promissory note were already stipulated. Also stipulated were the liability of all co-defendants, Grau, Pérez and the conjugal partnership, for a debt evidenced by another promissory note dated April 6, 1983 in the principal amount of $50,000.00 which was executed by co-defendant Pérez, and the amounts owed on account of said promissory note.

Upon the stipulations of the parties, the testimony of the witnesses during the trial, and the documents admitted in evidence, the Court makes the following findings of fact and conclusions of law.

### A. FINDINGS OF FACT

1. Plaintiff FDIC is a corporation organized under the laws of the United States of America, 12 U.S.C. § 1811, *et seq.*, who brought this action in its corporate capacity.

2. This Court has jurisdiction of the instant action under 12 U.S.C. § 1819 and 28 U.S.C. § 1345.

3. Girod Trust Company (the Bank) was a banking institution organized and existing under the laws of the Commonwealth of Puerto Rico prior to August 16, 1984. On or about August 16, 1984 the Secretary of the Treasury of the Commonwealth of Puerto Rico determined that the Bank was insolvent, ordered the Bank closed, took over the management and administration of the Bank and tendered to the FDIC the appointment as receiver of the Bank. The FDIC accepted the appointment as receiver of the Bank and, in its corporate capacity, purchased from the receiver certain assets of the Bank. Among these assets were the claims at issue in the instant action:

a) Promissory Note signed by co-defendant Pérez dated April 6, 1983 in the principal amount of $50,000.00, bearing interest from date at the annual rate of prime;

b) Promissory Note signed by co-defendant Pérez dated December 19, 1983 in the principal amount of $50,846.88, bearing interest at the annual rate of prime. This promissory note evidences the renewal of a promissory note signed by co-defendant Pérez on December 21, 1982 in the principal amount of $50,846.88, bearing interest at the annual rate of 11.50%.

4. Co-defendant Pérez admitted signing both promissory notes. Plaintiff is the holder of both notes. The balances owed on the promissory notes are due and payable.

5. At the time co-defendant Pérez signed the promissory notes, he was married to co-defendant Grau, and together they constituted a conjugal partnership created under the laws of the Commonwealth of Puerto Rico.

6. All co-defendants admitted liability for the debt evidenced by the April 6, 1983 promissory note in the principal amount of $50,000.00.

7. Said promissory note is guaranteed by two mortgage notes and mortgages which were pledged to Girod Trust Company as follows:

a) Mortgage Notes signed by co-defendants Pérez and Grau dated February 5, 1977 in the principal amount of $20,000.00, bearing interest at the rate of 8% per annum, due and payable on-demand.

A second mortgage was constituted to guarantee the aforementioned mortgage note by Deed No. 28, executed before Notary Public Frank Quiñones Vigo on February 5, 1977, encumbering the following property:

"URBAN: Lot number 31 of Altamira Development, located in the Monacillos Ward of Rio Piedras, with an area of 522.37 square meters, bound to the NORTH, in 15 meters with Lot No. 73; to the SOUTH, in 15 meters with Street No. 2; to the EAST, in 35 meters with lot No. 30; and to the WEST, in 35 meters with Street No. 5. Built upon said parcel of land is a concrete house for residential purposes."

Said mortgage was recorded at page 177 (overleaf), volume 682 of the Registry of the Property of San Juan, Third Section, lot number 3,159.

b) Mortgage Note signed by co-defendants Pérez and Grau dated May 23, 1983, in the principal amount of $30,000.00, bearing interest at the rate of 12% per annum, due and payable on demand.

A third mortgage was constituted to guarantee the aforementioned mortgage note, by Deed number 84, executed on May 24, 1983 before Notary Public Manuel Rivera Meléndez, encumbering the same property hereinbefore described.

Said mortgage was recorded at page 178, volume 682 of the Registry of the Property of San Juan, Puerto Rico, Third Section, Lot No. 3,159.

8. The mortgage notes were pledged through two pledge agreements:

Pledge agreement signed by co-defendant Pérez, pledging the $20,000.00 mortgage note; and a pledge agreement dated April 8, 1983 executed by co-defendants Pérez and Grau before Notary Public Manuel Rivera Meléndez, Affidavit No. 4056.

9. As of January 7, 1986 the amounts owed on account of the April 6, 1983 promissory note were: $50,000.00 for principal, $6,015.07 of interest, which interest continues to accrue at the rate of prime, plus $5,000.00 for stipulated attorneys' fees as per the terms of the promissory note.

10. Prior to Trial, co-defendant Pérez had admitted his personal liability for the debt evidenced by the promissory note dated December 19, 1983.

11. As of January 7, 1986, the amounts owed on account of the December 19, 1983 promissory note were: $47,000.00 for principal, $7,175.86 for interests, which interest continues to accrue at the rate of prime, plus $4,700.00 for stipulated attorneys' fees as per the terms of the promissory note.

12. The proceeds of the $50,846.88 loan, evidenced by the December 19, 1983 note, were disbursed as follows: $5,000.00 to renew loan number 22–421–8; $8,846.88 to renew loan number 33–01–00290–0;

$5,000.00 to renew loan number 32–01–00525–8; and the balance of $32,000.00 was deposited to co-defendant Pérez' account number 00–91–00085–7, as per Order of Payment dated December 21, 1982.

13. The proceeds of the loan were used to pay for previous loans made to purchase stock in Girod Trust Company (GTC) and in Girod Vela & Compañía, and to purchase additional stock in GTC.

14. The source of payment for the loan evidenced by the December 19, 1983 promissory note were increases to co-defendants Pérez' salary and the dividends obtained from the shares owned at GTC and Girod, Vela & Compania. Dividends were indeed received, and his salary was increased in approximately $30,000.00 while employed with the Bank.

15. At all times relevant herein, co-defendant Pérez was an employee of GTC. When he decided to buy the shares of GTC, he had always in mind the belief that in doing so, he was improving his job position and opportunities at the Bank.

16. At the time co-defendant Pérez purchased the shares, he considered it was a good investment. When he decided to purchase the shares, he did not have in mind any motive or reason other than to benefit his income and his job position and, thus, his family.

17. Co-defendant Pérez testified that, in executing the promissory note, he did not intend to defraud his wife nor the conjugal partnership.

18. Co-defendant Grau has been married to co-defendant Pérez since 1968, and since their marriage the only source of income for the family has been her husband's earnings.

19. Ever since Grau and Pérez have been married, the family economically benefitted from whatever job co-defendant Pérez held.

20. As admitted by co-defendant Grau, she has no reason to believe that her husband, in any of his job-related endeavors, at any time failed to act for the complete and

most rewarding benefit of the family. She also testified that she did not believe her husband, in making the loan, intended to defraud her or the conjugal partnership.

### B. CONCLUSIONS OF LAW

Co-defendant Pérez, Grau and the conjugal partnership constituted by them are jointly and severally liable for the amounts owed on account of both promissory notes subject of this proceeding. The liability in relation to the April 6, 1983 promissory note was stipulated. Said promissory note is guaranteed by the mortgage notes hereinbefore described.

Under the law, a rebuttable presumption provides that the conjugal partnership shall be liable for a debt incurred by only one of the spouses and that the obligation was incurred for the benefit of the conjugal partnership. This presumption derives from two sources. First, Art. 1308 of the Puerto Rico Civil Code, which in identifying the obligations for which the conjugal partnership is liable, includes all debts and obligations contracted during the marriage by either of the spouses, and personal loans incurred by any of the spouses, among other obligations. 31 L.P.R.A. Section 3661. The second source is the criteria set forth by the Supreme Court of Puerto Rico in *WRC Properties, Inc. v. Heriberto Santana, et al.*, 85 JTS 12 (P.R.1985). In this case, the insular court established the following test to determine the extent of the liability of the conjugal partnership for obligations incurred by either of the spouses:

(1) the debt or obligation must serve a family interest and must not be predicated on the fraudulent or hidden intent to injure the other spouse;

(2) the burden of proof is on the spouse or conjugal partnership denying liability. This burden of proof can be easily shifted if the spouse makes a *prima facie* showing of not having received any benefit from the incurred debt, among others, and;

(3) once the presumption has been rebutted, the liability of the conjugal partnership is subsidiary, subject to the prior marshalling of assets ("excusión de bienes") according to Article 1310, P.R. Civil Code, 31 L.P.R.A. Section 3663. *WRC Properties*, 85 JTS 12 (English translation).

The burden of proof is shifted by the non-contracting spouse back to the claimant-creditor with evidence establishing that the debtor spouse's obligation is predicated on a fraudulent or hidden intent to harm one of the spouses, or merely that the non-debtor spouse and family did not receive any benefit from the debt incurred. If such burden of proof is met, thereby rebutting the presumption that the obligation was for the benefit of the family, then the responsibility of the conjugal partnership is subsidiary to the prior marshalling of assets belonging to the debtor-spouse.

The determination of liability of the conjugal partnership for debts incurred by either spouse depends on the particular facts of each case. *See WRC Properties*, 85 JTS 12. In this case, after examining the evidence and the testimony of co-defendants Pérez and Grau, the Court finds that the presumption of liability of the conjugal partnership for the debt incurred by co-defendant Pérez has not been rebutted. The testimony of co-defendants Pérez and Grau has not established that there was no benefit to the spouse or to the conjugal partnership, or that co-defendant Pérez, in executing the promissory note, acted with a fraudulent or hidden intent to harm his spouse or the conjugal partnership. On the contrary, as our findings of fact reveal, the only source of income of the family was the husband's earnings and the payments due on the debt were made with co-defendants Pérez' salary and with dividends gained from the shares acquired from the proceeds of the loan, salaries and dividends being property of the conjugal partnership, Art. 1301, P.R. Civil Code 31 L.P.R.A. Section 3641. In addition, co-defendant Pérez used the proceeds of the loan for the acquisition of shares in GTC in the belief that in doing so he was improving his position and opportunities at the Bank. Furthermore,

co-defendant Pérez, in executing the promissory note, did not intend to defraud his wife or the conjugal partnership. All these facts taken together lead this Court to find that there has been no *prima facie* showing of not having received any benefit from the debt incurred. We therefore conclude that the debt at issue was incurred for the benefit of the conjugal partnership.

Accordingly, this Court finds that co-defendants Pérez, Grau and the conjugal partnership are jointly and severally liable for the debt evidenced by the December 18, 1983 promissory note.

JUDGMENT will be entered accordingly.

IT IS SO ORDERED.